**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Robert Hutchins, Jr., | ) | Case No. 2:25-cv-07324-BHH-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden S. Napier, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Robert Hutchins, Jr. ("Petitioner"), proceeding *pro se*, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, challenging disciplinary actions taken against him at FCI Edgefield. (Dkt. Nos. 1, 1-2, 1-3, 1-4, 11-1.) Currently before the Court is Respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Dkt. No. 19). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2) (D.S.C.), the assigned United States Magistrate Judge is authorized to review the petition and submit findings and recommendations to the United States District Judge. For the reasons set forth in greater detail below, the undersigned **RECOMMENDS** that Respondent's Motion for Summary Judgment (Dkt. No. 19) should be **GRANTED**.

## FACTUAL SUMMARY

Petitioner is an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution in Edgefield, South Carolina ("FCI Edgefield"). On July 15, 2025, Petitioner filed the instant Petition challenging two separate disciplinary actions taken against him at FCI Edgefield, arguing that such actions violated his due process rights. (Dkt. No. 1.)

1

### I.     Incident Report Number 3982785

The first disciplinary action at issue is an incident report completed on August 19, 2024 (Incident Report Number 3982785). (*See generally* Dkt. Nos. 1, 1-2, 1-3.) This incident report charges Petitioner with violating Prohibited Act Codes 296, "Mail Abuse, Disrupt Monitoring," and 328, "Giving/Accepting Money W/O Auth (Attempting)." (Dkt. No. 1-3 at 12.) The relevant incident report recounts that an officer at FCI Edgefield screened outgoing mail from Petitioner and determined that Petitioner was, *inter alia*, using a prohibited third-party email service to communicate with "multiple outside persons." (*Id*.) More specifically, the officer detailed:

> [Another inmate] is allowing inmate Robert Hutchins . . . to use his TRULINCS account which circumvents monitoring and is unauthorized. It has been determined Inmate Robert Hutchins . . . is using TRULINCS Public Messaging which he is not allowed to use under the account of [another inmate]. Hutchins knows he is not allowed to use Public Messaging and is circumventing the monitoring procedures. Hutchins also used a 3rd party email to text service which does not allow each individual person to approve contact with the inmate. In addition, Hutchins wrote in an email to have money sent to [another inmate] without authorization.

(*Id*.)

Petitioner received a copy of the final incident report on or about August 20, 2024. (*Id*.) Petitioner claims that he appealed this incident report but did not receive a timely response, which violates his due process rights. (Dkt. No. 1 at 2.) He therefore requests that the incident report be expunged and his Good Conduct Time restored. (*Id*.)

### II.     Incident Report Number 3986222

The next disciplinary action at issue is an incident report completed on August 26, 2024 (Incident Report Number 3986222). (*See generally* Dkt. Nos. 1, 1-2, 1-3, 1-4; *see also* Dkt. No. 19-1 at 25–43.) This incident report charges Petitioner with violating Prohibited Act Code 199, "Disruptive Conduct – Greatest[] Most Like 108 – Possessing A Hazardous Tool." (Dkt. No. 19-1 at 25.) The incident report recounts that an officer at FCI Edgefield screened outgoing mail from

2

Petitioner and determined that Petitioner was, *inter alia*, informing outside individuals of his "Facebook Account name." (*Id.*) The officer further explained:

> A search of social media Facebook located account Adbul Muhammad with pictures of Hutchins and posts dated on his page while assigned to FCI Edgefield. Hutchins has been assigned to FCI Edgefield [s]ince March 27, 2024. On March 14, 2024, prior to arriving at Edgefield, Hutchins posted, ["]Left FL On my wa[y] to SC.. fresh start.["] While assigned to FCI Edgefield, the following Facebook posts are on his account[:] July 2, 2024 ["]I just wanna be loved baby["] with a selfie type photograph of himself inside a cell[;] July 2, 2024 ["]I'm Him,["] with multiple photographs of Hutchins posing for pictures in front of a dark fabric[;] July 14, 2024 ["]Don't ever forget I had the City on FIRE,["] with a photograph of him with multiple other persons. The Facebook Post[s] dated in July are after Hutchins arrived at FCI Edgefield. This writer concludes inmate Robert Hutchins . . . is positively identified as the inmate in the Facebook Posts and was in possession/use of a cellular telephone while assigned to FCI Edgefield.

(*Id.*)

Petitioner received a copy of the final incident report on August 26, 2024. (*Id.*) A staff member advised Petitioner of his rights on that same day. (*Id.* at 27.) At that time, Petitioner "claimed the report to be not true as written" and provided a statement indicating he did not "have possession of a phone, and those photos are from USP Coleman 1." (*Id.*) After reviewing the information provided by the reporting staff member and Petitioner's statement, the Unit Discipline Committee ("UDC") referred the disciplinary charge to an Inmate Discipline Hearing Officer ("DHO") for further consideration on September 1, 2024. (*Id.* at 26.) On that same day, Petitioner was given a "Notice of Discipline Hearing Before the (DHO)." (*Id.* at 35.) Petitioner indicated that he wished to have a staff representative but did not wish to have witnesses at his DHO hearing, and he signed the Notice. (*Id.*) Petitioner was given a form detailing his rights at the DHO hearing, which he also signed on September 1, 2024. (*Id.* at 37.)

Petitioner's DHO hearing was held on September 9, 2024. (*Id.* at 39–43.) The DHO Report identifies A. Cano as the Disciplinary Hearing Officer and indicates that during the hearing

3

Petitioner was afforded the opportunity to make a statement, have a staff representative, provide evidence on his behalf, have witnesses appear, and/or present written statements of unavailable witnesses. (*Id.*) Petitioner ultimately waived his right to a staff representative and witnesses. (*Id.*) Petitioner's statement before the DHO reads as follows:

> I am innocent. My brother has been posting for me since I went to prison. I have never had a cellphone. The officer even stated someone else posted on my [site]. There are pictures and posts for years. I never used or possessed a phone. I stay to myself, mind my own business, and work.

(*Id.*) In addition to his statement, Petitioner submitted photographs and letters as documentation in support of his innocence. (*Id.*) The DHO considered Petitioner's statement and documentary evidence before rendering a decision. (*Id.*)

The DHO also considered the letters and screenshots submitted by the reporting officer, and Petitioner's Judgement and Commitment showing that, due to his current conviction, he was not allowed internet access.[1] (*Id.*) After consideration of all the evidence, the DHO found that Petitioner committed the prohibited act of Disruptive Conduct, noting:

> It is irrelevant where you took the photographs, because you are not allowed to post them on social media during your incarceration at any Federal Correctional Facility. Facebook does not allow other individuals to maintain your Facebook page; therefore, you can not have your brother maintain the page for you. . . . Since staff did not find the actual cellphone or how you obtained access to the internet, you are being charged with disruptive conduct. Staff are not required to find you in possession of the phone, because you are not being charged with that. The use of social media can allow an inmate to plan an escape without the chance of staff monitoring the content. You would also be able to make threats to civilians, or use the internet access for other potential criminal acts in the local community, which could potentially harm civilians in the community. For all these reasons listed, it is not intended that inmates contact the general public without being monitored. Based on the fact the officer found your Facebook Account with current updates, and you admitted you have had it updated by your brother, there is enough information to support the charge against you.

---

[1] It is worth noting that Petitioner was convicted of distribution and receipt of child porn, among other related crimes. (*See, e.g.*, Dkt. No. 19-1 at 19.)

4

(*Id*.) The DHO then outlined the sanctions to be imposed and the reasons for such sanctions. (*Id*.) Specifically, the DHO sanctioned Petitioner to the disallowance of 41 days of good conduct time, 120 days loss of commissary privileges, 120 days loss of email privileges, and 120 days loss of phone privileges. (*Id*.) The DHO Report was completed on September 16, 2024, and was delivered to Petitioner on September 26, 2024. (*Id*.)

Petitioner challenges this disciplinary action, again claiming that his due process rights were violated. (*See generally* Dkt. Nos. 1, 1-2, 1-3, 1-4.) He therefore requests that this incident report be expunged, and his Good Conduct Time restored. (*Id*.)

## PROCEDURAL HISTORY

On December 29, 2025, Respondent filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment, asserting that the instant Petition should be dismissed because Petitioner's claim relating to Incident Report Number 3982785 is now moot, and that Petitioner's claim relating to Incident Report Number 3986222 should be dismissed because Petitioner received all due process to which he was entitled. (Dkt. No. 19.) On December 30, 2025, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 20.) After requesting and receiving an extension of time to file a response, Petitioner responded on January 27, 2026. (Dkt. No. 25.) Respondent declined to reply by the February 3, 2026 deadline. (*Id*.) Accordingly, the motion before the Court has been fully briefed and is ripe for habeas review.

## LEGAL STANDARD

As matters outside the pleadings have been considered by this Court, Respondent's Motion will be treated as one for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule

5

12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. . . .”). Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: “The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed “material” if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is “genuine” if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.

In determining whether a genuine issue has been raised, this Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, “[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.” *Anderson*, 477 U.S. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 321 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the Court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## DISCUSSION

As noted, Respondent argues that the § 2241 Petition should be dismissed because: (1) Petitioner's claim relating to Incident Report Number 3982785 is now moot, and (2) Petitioner

6

received all due process safeguards afforded to him by *Wolff v. McDonnell*, 418 U.S. 539 (1974), throughout the disciplinary process pertaining to Incident Report Number 3986222. The undersigned considers these arguments, below.

### I.    Incident Report Number 3982785

Respondent first argues that Petitioner's claim regarding Incident Report Number 3982785 should be dismissed as moot because the disciplinary action at issue has now been expunged by the BOP and Petitioner's Good Conduct Time has been restored. (Dkt. No. 19 at 9–11.) As support for this argument, Respondent has submitted an affidavit from BOP Paralegal Specialist, J. Carter, who avers that "Incident Report Number 3982785 was expunged during the administrative remedy process, and it has been removed from Petitioner's Disciplinary Record." (Dkt. No. 19-1 at 2.) He further avers that "Petitioner's updated Chronological Disciplinary Record as of November 18, 2025, does not reflect Incident Report Number 3982785 as it has been expunged," and that "Petitioner's Sentence Monitoring Computation Data reflects that on June 18, 2025, Petitioner had Disallowed Good Conduct Time ("DGCT") restored as a result of Incident Report Number 3982785 being expunged." (*Id.*) Attached to J. Carter's affidavit are the relevant SENTRY records, which substantiate his claims. (*Id.* at 4–23.) Petitioner's response brief does not mention Respondent's mootness argument. (*See generally* Dkt. No. 25.)

A federal court's jurisdiction empowers it to decide questions that can affect the rights of litigants in the case before it, but it has "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (citations and internal quotation marks omitted). A case is moot where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.*; *see also Hood v. Johns*, 432 F. App'x

180, 180 (4th Cir. 2011) (an appeal is moot if a court cannot grant any effectual relief in favor of the appellant).

Here, the record indicates that Petitioner's lost Good Conduct Time has been restored, and Incident Report Number 3982785 has been expunged. (Dkt. No. 19-1 at 2). Because Petitioner has already received the relief he requests, his claim regarding Incident Report Number 3982785 should be **DISMISSED AS MOOT**. *See*, *e.g.*, *Shellman v. Vereen*, No. 4:19-cv-226-JFA-TER, 2019 WL 3521737, at *2 (D.S.C. Aug. 2, 2019) ("Based on the respondent's declaration, the 27 hours of GTC were restored and the disciplinary action . . . was expunged by the respondent. Thus, the petitioner's claims in his original § 2241 petition are now moot."); *Gordon v. Andrews*, No. 1:20-cv-578, 2020 WL 8617590 (E.D. Va. Sept. 8, 2020) (dismissing § 2241 petition because petitioner "has received the relief he requested in his petition") (citing *Johnson v. Finnan*, 252 F. App'x 98, 99 (7th Cir. 2007) (restoration of Good Time Credits renders moot inmate's habeas challenge)).

## II.     Incident Report Number 3986222

Respondent further argues that Petitioner's claim pertaining to Incident Report Number 3986222 should be dismissed because Petitioner received all due process to which he was entitled. (Dkt. No. 19 at 11–22.) For the reasons detailed below, the undersigned agrees.

### A.  Inmate Due Process Safeguards

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Constitutional Amendment XIV § 1. In *Wolff v. McDonnell*, the Supreme Court held that inmates are entitled to limited due process rights in prison disciplinary proceedings to the extent that a protected liberty interest, such as the Good Conduct Time the petitioner lost in this case, is affected. 418 U.S. 539 (1974). The Supreme Court has outlined the due process protections inmates are entitled to with respect to

prison disciplinary proceedings where the inmate's liberty interest is at stake. Due process is satisfied in prison discipline hearings when the inmate receives: a finding from an impartial decisionmaker; 24 hours advance written notice of the charges; an opportunity to appear at the hearing; a conditional opportunity to present documentary evidence and testimony from witnesses; and a written statement of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564–66; *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990). The BOP's rules embodying disciplinary procedures are codified at 28 C.F.R. § 541.1 *et seq*. These rules and regulations were written to comply with the constitutional requirements of due process in prison discipline matters.

The record of Petitioner's hearing reflects that the BOP complied with the requirements of *Wolff*. *See Wolff*, 418 U.S. at 564–66. Petitioner was given advance written notice of the charges against him more than 24 hours in advance of the UDC's decision and DHO hearing. (Dkt. No. 19-1 at 25–26, 35, 39–43.) Petitioner was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative. (*Id*. at 28–35, 37, 39–40.) Petitioner submitted documentary evidence—including a personal statement in which he denied the charges against him—but declined to call witnesses. (*Id*. at 28–35.) Petitioner initially requested a staff representative but later changed his mind. (*Id*. at 35, 39–40, 45.) Further, the record of the hearing reflects the decision of the DHO, the evidence relied upon, and the reasons for the decisions and sanctions imposed. (*Id*. at 39–43.) Thus, as Respondent asserts, Petitioner received all procedural due process protections required under *Wolff*.[2]

---

[2]     To the extent Petitioner asserts that his due process rights were violated because the DHO threatened to find him guilty of the charged offenses if he remained silent at the DHO hearing, the record does not support this assertion. (Dkt. No. 1-2 at 3.) Petitioner contends that he was not accurately informed of his right to present a statement or remain silent; however, the record plainly shows that he was informed of this right in full. (Dkt. No. 19-1 at 37.) More specifically, Petitioner signed a form indicating that he received notice of his rights on September 1, 2024. (*Id*.) The form explicitly stated: "You have . . . [t]he right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act[.]" (*Id*.) Additionally, to the extent Petitioner asserts that he was denied due process because the DHO presiding over his disciplinary action was not impartial, he provides nothing more than self-serving

## B. Sufficiency of Evidence in Prison Disciplinary Proceedings

Having found that Petitioner was afforded all of the procedural due process protections required by *Wolff*, the undersigned turns to the sufficiency of the evidence relied upon by the DHO in rendering his decision. In *Superintendent, Massachusetts Correctional Institution v. Hill*, the Supreme Court set out the constitutional evidentiary standard to be used when courts review prison discipline decisions. 472 U.S. 445 (1985). The *Hill* court held that due process is satisfied if there is "some" evidence to show that the inmate committed the offense. *Id.* at 455. The Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456.

"The 'some evidence' standard is a lenient one, requiring no more than 'a modicum of evidence,' and is met if there is any evidence in the record that could support the board's decision." *Taylor v. Bauknecht*, No. 6:06-cv-2268-DCN, 2007 WL 2021880 at *4 (D.S.C. July 6, 2007) (quoting *Hill*, 472 U.S. at 455–56). The "some evidence" standard is less exacting than the preponderance of the evidence standard, requiring only that the decision not be arbitrary or without support in the record. *Hill*, 472 U.S. at 457. In reviewing a decision for "some evidence," courts "are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's

---

conclusory allegations to support this claim. (*See generally* Dkt. Nos. 1, 25); *see also Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the Court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."); *Vaden v. Enochs*, No. 7:21-cv-00155, 2022 WL 520804, at *4 (W.D. Va. Feb. 22, 2022) ("On summary judgment, [the nonmoving party] cannot rest on unsupported statements in his brief to create a genuine dispute of fact."). Thus, Petitioner's arguments do little to persuade the Court that he was denied due process.

decision to revoke good time credits has some factual basis." *Id.* at 455–56; *see also Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990). "This standard requires 'only that the decision not be arbitrary or without support in the record.'" *Taylor*, 2007 WL 2021880 at *4 (quoting *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999)). In other words, the Court's focus is "limited solely to a determination of whether there is some evidence in the record to support the DHO's decision." *Johnson v. Warden, FCI Williamsburg*, No. 1:13-cv-3347-JFA-SVH, 2014 WL 4825926, at *8 (D.S.C. Sept. 24, 2014) (noting that "Petitioner denies knowing that the contraband was in his locked locker"; finding no due process violation because "there is some evidence in the record to support the DHO's decision that Petitioner was in constructive possession of the marijuana found in his locked locker"), *aff'd sub nom. Johnson v. Cruz*, 597 F. App'x 161 (4th Cir. 2015).

Upon review, the undersigned finds that there was "some evidence" to support the DHO's decision. *Hill*, 472 U.S. at 455–56. The DHO expressly considered Petitioner's hearing testimony, written statement, photographs, and other documentary evidence. (Dkt. No. 19-1 at 41.) The DHO also considered the officer's report, the letter and screenshots submitted therewith, and Petitioner's Judgment and Commitment indicating that Petitioner was not allowed internet access due to his current conviction. (*Id.*) Based on all of the evidence presented, the DHO concluded that Petitioner committed the prohibited acts as charged. (*Id.*) The evidence considered by the DHO has been submitted to the Court, and the Court's independent review of the same indicates that such evidence could be reasonably construed as supporting the DHO's findings. (Dkt. No. 19-1 at 24–43.) The undersigned therefore concludes that there is "some evidence" to support the DHO's decision, and the decision should be upheld. *Hill*, 472 U.S. at 455–56.

To the extent Petitioner argues that the Court should grant his Petition because he is actually innocent of the charged offense underlying his disciplinary proceeding, the undersigned

finds this argument unpersuasive. (*See generally* Dkt. Nos. 1, 25.) Indeed, a claim of actual innocence "is not a basis for federal habeas corpus relief" in this context. *Johnson*, 2014 WL 4825926, at *8 (rejecting actual innocence claim as basis to grant § 2241 petition challenging disciplinary proceeding). Regardless, the record before the Court indicates that the DHO's decision was not arbitrary and was supported by at least a modicum of evidence. (Dkt. No. 19-1 at 24–43.) As such, this Court may not reconsider it or set it aside. *Hill*, 472 U.S. at 456; *Taylor*, 2007 WL 2021880 at *4.

In sum, the undersigned cannot conclude that Petitioner's constitutional rights were violated because he received all the process due to him under the standards established in *Wolff*, 418 U.S. at 564–66, and *Hill*, 472 U.S. at 455–56. Accordingly, the undersigned **RECOMMENDS** that the DHO's decision should be upheld, and that Respondent's motion should be **GRANTED**.

<u>**CONCLUSION**</u>

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that Respondent's Motion for Summary Judgment (Dkt. No. 19) should be **GRANTED**.

  **IT IS SO RECOMMENDED.**

_____

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

June 4, 2026
Charleston, South Carolina

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).